Thank you, your honor. Good afternoon, your honors. May it please the court. Laura St. John and I'm representing petitioner Maria Tomas Juan. I'd like to start with CAT because it's a pure legal issue that is directly controlled by this court's precedents and dictates an outright grant of relief. Then I will address nexus and well-founded fear for withholding under the act. Starting with the Convention Against Torture, Haley V. Holder says that where the facts and record compels but one conclusion, the proper course is for the court to grant CAT outright, and that is what should happen here. The agency relied heavily on Guatemala's national efforts to curb violence against women to make its no acquiescence finding. But in doing so, it mischaracterized and discounted substantial country condition and testimonial evidence that compels a contrary finding. Two weeks ago in Xochitl Jimenez, the case cited in our 28-day letter, the court reversed similar findings by the board relating to cartel violence. Now, here we don't have cartel violence, we have domestic violence. But at heart, the flaw in the agency's decision is the same. The agency made its determination based on these big national laws, yet ignored the substantial compelling evidence in the record that consistently said that despite these laws, corruption and impunity are still huge problems when it comes to domestic violence in Guatemala, in our case. The country evidence in this case is disturbingly clear. It's not ambiguous, as the board claims. Guatemala has passed new laws, but those laws aren't working. And what Xochitl Jimenez shows is that top-level government reforms, like those the board relied upon, are not dispositive. There also needs to be corresponding evidence about significant reductions in corruption or violence. And that's simply not the case here. Despite national laws being passed, the Department of State report found that violence against women remains a serious problem, that impunity for perpetrators remains very high, and that police often fail to respond to requests for assistance related to domestic violence. That's AR 390-91. Likewise, the UNHCR found that national laws have, quote, had little impact on reducing violence against women or holding those responsible to account. That's AR 738. The country reports also compel finding that it's a combination of widespread corruption and pervasive misogyny in Guatemala that play a key role in the ongoing violence against women. For instance, the record shows that 53.9 percent of basic household chores is appropriate and acceptable. That's AR 830. And as the expert declaration in this case explains, mighty women in Guatemala rightly understand that police won't protect them from violence because police share in the racist and sexist views that indigenous women belong to the lowest class of citizens. They believe that family violence is not a serious matter worthy of law enforcement's investigations, and they're widely known to be corrupt and susceptible to bribes. That's AR 217. The board downplayed all of this evidence, citing national reforms, but that approach is incompatible with Xochitl Jaimes. Also, as in Xochitl Jaimes, the board here discounted... Yes? Sorry, I thought somebody spoke. Also, as in Xochitl Jaimes, the board here discounted Ms. Tomas Juan's credible testimony about her own experience with police corruption. In 2010, she reported her husband's death threats to the police, but the officers refused to help her unless she paid a bribe. That's AR 1466. Council, let me ask you, we don't really have a finding from the board on... I guess there's some ambiguity in how to read the board's decision, but suppose we think that we don't really have a finding on whether internal relocation would be possible within Guatemala. Why shouldn't we remand to allow the board to consider that issue in the first instance? Yes, Your Honor, so in regards to the CAT claim, the board does have to consider all of the evidence, and the ability to relocate is one of the factors that has to be considered, but it's not dispositive. And the court is able to look at the substantial evidence, because there is no additional fact-finding required here. The evidence is already there in the record, and the court can and should go ahead and look at all the factors and what the case. And turning to that point, specifically in this case, the record shows, the uncontradicted, credible testimony of my client shows that in 2010, or rather, I'll start, it shows that she continues to face significant harm at the hands of her husband. So, Council, the last time your client was physically with your husband was in 2007? That's correct, Your Honor. But in 2010, he found her with one month of her return to the country after she'd been gone for three years. He immediately threatened her life, and then he proceeded to relentlessly stalk her by phone until she fled the country again. That's at AR 135 to 139. Between 2011 and 2014, he repeatedly traveled hours to Guatemala City and showed up at her old homes. She only avoided him by continuously moving to stay one step ahead. That's at AR 145 to 47. And as recently as 2016, he told her family that he would harm or kill her if she returns to Guatemala. That's at AR 865 and 871. And finally, it's her unrebutted testimony that her husband hired the road in 2014. That's AR 1467. And so, none of this evidence was ever rebutted or contradicted by anything else in the record. And as that being the case, when all of the evidence is considered, as CAT requires, this record compels but one conclusion, that she's not able to relocate within the country and that her husband is still looking for her and with the intent to torture or kill her. Your honors, I would also like to note that in this case, under NURU, past torture is a principal factor that supports a finding of likelihood of future torture. And there is no question that Ms. Tomas Juan has suffered past torture in this case. Her husband beat and raped her for years. He stabbed her with a knife. He threatened her life at gunpoint. And when she was eight months pregnant, he tied her to a post and beat her stomach to forcibly kill her unborn child. That's AR 1465-67. And so, based on all this evidence, we think that the record compels but one conclusion, that under Haley and Xochitl Jimenez, Ms. Tomas Juan is entitled to protection under CAT. And the significant passage of time alone is not sufficient under Haley. Haley actually forecloses the court's or the board's reliance on the sufficient passage of time. Because in that case, the board did a similar thing, said that six years had passed. And the court found in Haley that while the time had passed, where there was uncontradicted evidence in the record that she continued to be at harm, that the court could not support or could not uphold the board's supposition that the significant passage of time alone dictated something other than relief. And the significant passage of time here also is not that unique. In Edu, for instance, 15 years had passed since her last torture. And Haley, as I said, six years had passed since her last contact with her torturer. And I don't want to cut into your rebuttal time, but can I just ask you briefly, in your opening brief, did you argue that we should grant outright on CAT rather than remanding? Yes, Your Honor. We argued that the record here establishes, or the substantial evidence in the record here, establishes a grant of CAT. I think procedurally, the court has to remand with instructions to grant CAT. But yes, a CAT grant is required in this case. I would like to turn quickly to withholding of the act. The government asked for a broad remand, claiming that there's been no nexus finding here. But boiled down, this argument is that the board didn't use the magic words on account of or because of. And the board did specifically find that Ms. Tomas Juan suffered harm rising to the level of persecution at the hands of her abusive husband. That's AR3. And that, together with an assumed social group defined by her inability to leave her domestic relationship with said husband, leaves no doubt that her membership in that group was at least a reason for the harm she suffered. And under Barajas-Romero, a reason is all that is required for nexus and withholding. And so thus, the record here establishes past persecution on account of the assumed social group. And the court is empowered to review the subsequent well-founded fear findings following the path laid out by Hannity Kessler. And that's the relief that Ms. Tomas Juan seeks for withholding, that the court apply the board's assumption that she is a member of the assumed social group, apply the mandatory legal presumption of well-founded fear that that triggers, and then review and reverse the board's subsequent determination that there is no clear probability of future harm. Because for all the reasons I explained in CAT, the simple passage of time here is insufficient. And actually, the record requires or compels a finding that she is not able to live safely in Guatemala. I see that I've run out of time, Your Honors. All right. Thank you. Mr. DiMaggio, whenever you're ready. Good afternoon, Your Honors. Giovanni DiMaggio on behalf of the Attorney General. May it please the court. Your Honors, remand is necessary here because the scope of this court's review is limited here to an incomplete board decision that includes a gap which can only be filled by the perspective of withholding a removal claim. Without a nexus determination, without an unable or unwilling determination to add to the finding of assumed membership in a particular social group, the board's affirmance of the immigration judge's clear probability finding, standing alone as it does here, does not explain whether the presumption of future persecution was triggered and relatedly does not explain which party bore the burden of proof to begin with. Therefore, under Halem, Gonzales v. Thomas, and Ventura, remand is necessary for the agency to exercise its decision-making authority in the first instance to clarify the decision to allow for adequate review. Mr. DiMaggio, why can't we just assume that the burden was on the government? We can't assume that, Your Honor, because to make that assumption, one of two things would have had to happen. One, the agency would have had to make that assumption and then, in turn, the court could rely on it. Or two, the agency would have had to make the requisite underlying findings that would then trigger that presumption as a matter of law. In this instance, we do not have any of the Ms. Thomas-Swan was a member of her particular social group, but notably lacking from that, we don't have a determination as to nexus. We don't have a determination as to unable or unwilling. Those two issues combined with membership in the particular social group collectively are what's necessary to establish past persecution in the term of art sense, meaning past persecution consisting of harm, rising to the level of persecution inflicted by the government or private individual whom the government is unable or unwilling to control. We don't have that here. We simply had a board remand with a direction to the immigration judge that the past harm should be treated as having risen to the level of persecution and then instructions to proceed from there with the analysis, including as the nexus, unable or unwilling, and so on and so forth. So for that reason, Your Honor, the court cannot just assume that the burden was on either party for that matter because we don't have that assumption from the agency, nor do we have the necessary underpinnings in terms of legal determinations that would be necessary to conclude as a matter of law that that presumption was triggered or that the burden would have fallen to one party or the other. And for that reason, because these decisions that have not percolated through to the board decision, they're not there and the court cannot make it in the first instance remand would be required for the agency to clarify its decision and allow for adequate review. Your Honor, if you don't have any other questions with respect to the withholding claim, I do want to address some of the arguments that my sister made with respect to CAT. As for the CAT claim, I first want to clarify one thing at the outset. There's no possibility here for the court to grant CAT. The board only addressed acquiescence. Forgive me because I can't see you. I don't know which one of your honors pointed out that we don't have a finding from the board or asked whether we have a finding from the board on internal relocation. We don't. The board simply addressed acquiescence. And at page four, it's explicit that when the board affirms the immigration judge's denial of the CAT claim, the board says, in particular, we do not disturb the immigration judge's finding that a public official would not acquiesce to the torture. And that's where the board stops. So no matter what, there's not going to be a CAT grant as a result of whatever the court does or doesn't do in this case. Of course, the government's position in its answer in brief is that the CAT claim should be remanded along with the withholding of removal claim, acquiescence being the only issue preserved by the board. As I just said, a CAT grant could not happen anyway. Additionally, on remand, we just don't know what direction the agency will go ultimately, definitively with the withholding of removal claim. And for example, if the agency were to grant withholding of removal, that would move the CAT claim. Nor do we know what direction the agency will go specifically as to the unable or unwilling determination, which to be sure is a separate and distinct legal standard. But the underlying factual underpinnings of those determinations do overlap with the acquiescence determination or the facts underlying an acquiescence determination. Wasn't there a determination by the board that there was, in fact, no consent or acquiescence by a public official? Yes, there was, Your Honor. Well, and that is independent, a wholly independent determination from the withholding analysis, correct? I agree with that, Your Honor, yes. Well, then why can't this court go ahead and address that theoretically as a legal matter, the court could address it. Again, as a matter of prudence, the government recommends remanding here in light of the gaps, the particular gaps here with respect to the withholding of removal claim and the prospect that the agency could address on remand, the facts underlying the unable or unwilling determination, those facts may overlap with and impact the acquiescence determination. For that reason, we recommend remand. Give me a hypothetical or an example of how that could occur, how some determination on withholding could affect the determinations that have been made, is it there was neither consent nor acquiescence? Well, again, they're separate in terms of legal concepts, but factually, one could see, for example, how if there's evidence to support that an individual could act and the government, for whatever reason, was unwilling to control that individual, that would satisfy the unable or unwilling aspect of the withholding claim. And likely, those same facts would satisfy an acquiescence claim on the theory that the government official who was unwilling, you know, knew of and opted not to control or prevent harm that would come from that individual. Just as a hypothetical, I will say, Your Honor, also, just to an observation, were the court to address the CAT claim, there is an implication or there is a play here, the agency's finding with respect to credibility slash reliability. And again, the government doesn't take any position on the CAT claim. But just as a matter of observation of what's on the record here, the immigration judge found that although Ms. Tomaswan's testimony was credible, it was less than reliable. The board affirmed that finding. And in her opening brief, Ms. Tomaswan does not address the black reliability side. So I just want to go to, this is Judge Bennett, although you just said you don't address the CAT claim in your brief, you do say in your brief that we should remand the CAT claim along with the withholding claim. So you do address it to that extent. Yes. Yes, just to be clear. Thank you for that clarification. I didn't want to, at the bottom, on page 13 of the answering brief, the government states that on remand, the board would have an opportunity to reassess Ms. Tomaswan's CAT protection claim if necessary. And then cites, using the CF signal, AFRAE, where in that case, the court found that there were errors identified in the immigration judges and boards' unable and unwilling analysis. And given the substantial overlap of that evidence in the CAT context, not of the legal concepts per se, but the evidence, the court remanded for the BIA for further consideration. And we recommend the court take an analogous approach here. Mr. DiMaggio, this is Judge Bennett. Yes. Where were you going with this credibility? Just to observe that the, it's the reliability, actually, that there was an interplay there in the page four of the board's decision. Well, I understand what the board said. What do you want us to do with that? That's what I understand what you're saying. I don't want you to do anything with that. I want you to send it back. As we stated in our brief, I want you to send it back. But I'm just observing for the court that it would have to contend with that aspect of the agency's decision, because to the extent that the acquiescence issue is preserved, what is also preserved along with it is the IJ's weighing of the evidence and including its diminished weight attribution to those aspects of the evidence that is found unreliable. Well, that in fact would give more support to the determination made by the board, wouldn't it? And that is, it may have been credible, but she kind of, I guess, exaggerated is the best way I can read what was said about credibility. Well, again, the government doesn't take a position on the merits. I'm just pointing out the status, essentially, of the case, the posture of these cases based on the agency decisions before the court. I do see I'm out of time. Unless the court has any other questions for the reasons discussed, for the reasons in the government's brief, we ask that you remand the decision to the board for clarification and to allow for adequate review. Ms. St. John, you had used up all your time, but we gave counsel for the Attorney General some extra time. So we will give you two minutes for rebuttal. Very much appreciate that, Your Honor. Turning this question on credibility, first, the board didn't assume her credible. That's at AR3. And this is the first time that my colleague has raised this issue, but I would note that this issue, this rule is settled, and we'd be happy to provide a 28-J or additional briefing on it, but the case is Ming Divey Sessions. And turning now to his claim that it is inappropriate to rule on CAT in this setting, first, as I think Judge Murphy correctly pointed out, the issues that are problematic with the withholding decision don't impact a CAT analysis at all. The issues of nexus and particular social group are irrelevant to a CAT analysis, and again, the government has consistently argued that there's need for additional fact-finding here in their own brief. For instance, at page two of their brief, it's based on the record that currently exists. Moreover, I would note that Avendano Hernandez is a case that contradicts my colleague's assertion that it's inappropriate for the court to rule on CAT outright. Counsel, just so I'm reluctant to interrupt your rebuttal, but just so I absolutely make sure I understand your argument, your argument is that we can decide the CAT question without remand, whichever way we choose to decide it? That's correct, Your Honor, is that the CAT question can be decided today without remand, except for the procedural of you can hold that she is eligible or not eligible for CAT today. Okay, so even if we were to rule against your client, your position is that we have the authority to do that, notwithstanding the government's position that it ought to be remanded. That's correct, Your Honor, because the record here is set, the law and facts are set, and substantial evidence in this record compels a finding that she actually is eligible for CAT. And what I was thinking about Avendano is a case where the board dismissed the CAT claim based on acquiescence, just like the case here, yet went on to look at all of the established facts in the record and remanded with a grant of CAT in that case. And I see that I am again over time, so I will end there. All right, we thank counsel for their helpful arguments. This case will be submitted.
judges: Murphy, Bennett, Miller